**AMERICAN TCP CORPORATION, Plaintiff,**

v.

**SHELL OIL COMPANY, Defendant.**

United States District Court, S. D. New York.

Jan. 10, 1955.

See, also, D.C., 123 F.Supp. 55.

Bruce B. Clyman, New York City, for plaintiff.

Wickes, Riddell, Bloomer, Jacobi & McGuire, New York City, for defendant.

BICKS, District Judge.

■ At issue is defendant Shell Oil Company's motion under Rule 12(f), F.

R.Civ.Proc., 28 U.S.C.A., to strike as "immaterial and impertinent" several allegations of a complaint by American TCP Corporation. Such "motions", the law seems settled, "are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied". 2 Moore's Fed. Prac., 2d Ed. [1948] § 1221, pp. 2317–2318; see Glatt v. Notion Accessories, Inc., D.C.S.D.N.Y., 15 F.R.D. 150; United States v. Shubert, D.C.S.D.N.Y., 14 F. R.D. 471; Citrin v. Greater New York Industries, Inc., D.C.S.D.N.Y., 79 F.Supp. 692; Samuel Goldwyn, Inc., v. United Artists Corporation, D.C.S.D.N.Y., 35 F. Supp. 633, 637.

In the case at bar, American seeks treble damages under the Sherman and Clayton Anti-Trust Acts[1] as well as judgment that TCP is not Shell's trademark, but rather a generic name for tri-cresyl phosphate which is in the public domain. Supporting these demands, American charges that Shell, Shell Development Company and their licensee Conoco, under an allegedly bad faith TCP patent application and rejected trademark, have conspired to carve up markets for gasoline containing TCP. In addition, the complaint continues, Shell has sought and secured monopoly by boycotting TCP manufacturers pushing sales to independent marketers, among them American, as well as threatening to sue independents for infringement of a TCP trademark Shell knows is invalid and touting a TCP patent application Shell knows will be denied. To proof of these allegations, the challenged assertions seem clearly material.

■ At the outset, obviously material to both the unfair competition and monopoly charges is the disputed assertion detailing Shell's stock links to Royal Dutch and British Shell. Whether Shell and Shell Development Co., owned al-

<hr />

1. 15 U.S.C. §§ 1, 2, 3, 7, 12, 15, 22 and 26, 15 U.S.C.A. §§ 1, 2, 3, 7, 12, 15, 22, 26.

most equally by Shell and Batavian Petroleum, can conspire to divide markets in violation of Section 1 of Title 15 U.S.C., 15 U.S.C.A. § 1 , may turn on the extent Shell and Batavian are, on the one hand, owned in common or, on the other, competitors, actual or potential. In addition, Shell's market vantage, crucial to any monopoly charge, may depend on the strength of its parent's or affiliates' positions.

 In like fashion, the remaining disputed allegations bear closely on Shell's alleged attempt to monopolize. Required for proof of a monopoly try is some showing of specific intent. United States v. Griffith, 334 U.S. 100, 105--106, 68 S.Ct. 941, 92 L.Ed. 1236; United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 431–432. The crux of that intent charge here, it will be recalled, is that Shell, knowing TCP is neither patentable nor trademarkable, sought a monopoly by threatening independents marketing TCP with infringement litigation and TCP manufacturers pressing sales to independents with boycotts. Essential to this showing of bad faith infringement threats is the allegation that the need for and beneficial effects of TCP were long ago discovered by another and that Shell well knew, therefore, that its trademark and patent applications would be, as they seem to have been to date, unsuccessful. Compare Kobe, Inc., v. Dempsey Pump Co., 10 Cir., 198 F.2d 416, 424–425, certiorari denied 344 U.S. 837, 73 S.Ct. 46, 97 L. Ed. 651, and Lynch v. Magnavox Co., 9 Cir., 94 F.2d 883, 889, with Ronson Patents Corp. v. Sparklets Devices, D.C.E.D. Mo., 112 F.Supp. 676, 687–688 and Morny v. Western Union Telegraph Co., D.C. S.D.N.Y., 40 F.Supp. 193, 201–202. Similarly vital is American's charge that Shell pressured TCP manufacturers, on pain of boycott, to curb TCP sales to independent refiners. True, that allegation does not expressly state American was one of those whose supplies Shell sought to limit. Equally true, however, a recent aim to drive out competitors other than American evidences that plan for mo-

nopoly which, American alleges, caused its damage. Such charge, in addition, points toward that "harm to the general public" necessary for treble damage recovery. Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236; See Tivoli Realty, Inc., v. Paramount Pictures, Inc., D.C.D. Del., 80 F.Supp. 800, 806.

Accordingly, the motion is denied.